## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

OKLAHOMA FARM BUREAU MUTUAL )
INSURANCE COMPANY AS SUBROGEE, )    Case No.CIV-22-18-D
OF MICHEL DIEL )
    Plaintiffs, )    Removed from the District Court
     )    Garfield County, Oklahoma
v. )    Case No. CJ-2021-254-02
     )
OMEGA FLEX, INC., )
    Defendant. )

## DEFENDANT OMEGA FLEX, INC.'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF SANCTIONS AGAINST PLAINTIFF DUE TO PLAINTIFF'S INTENTIONAL SPOLIATION OF EVIDENCE

Defendant Omega Flex, Inc. ("Omega Flex") respectfully seeks an Order imposing spoliation sanctions on Plaintiff Oklahoma Farm Bureau Mutual Insurance Company a/s/o Michel Diel ("Farm Bureau"), for intentionally demolishing the Diels' entire house without providing proper notice to Omega Flex of its intent do to so.  This Motion arises because Farm Bureau is seeking to recover, as subrogee, $518,000.00 that it spent at the Diels' request to build them a brand new home following a small attic fire that did not damage most of the structure.  By spoliating the entire home without providing notice of that decision to Omega Flex, Farm Bureau prevented Omega Flex from assessing for itself whether Farm Bureau's decision to demolish and rebuild was justified.  As discussed herein, Omega Flex seeks an Order limiting Farm Bureau's potential recovery of damages

related to the home to $4,500.00, which is the provable cost that Farm Bureau spent on fire/water mitigation services prior to Farm Bureau's decision to demolish the home.[1]

## **INTRODUCTION**

Lightning struck the roof of Michael and Sondra Diel's home on July 11, 2020, causing a fire contained within a portion of the home's attic.  On July 13, 2020, Farm Bureau retained a third-party company, ProClean, to perform fire/water mitigation services before any necessary repairs were done.  It was evident at the Parties' joint inspection on July 30, 2020 that fire or water damage to most of the interior and exterior of the home was non-existent or minimal, and that only a small portion of the home's ceiling, roof, and attic space would need repairs.  Pro Clean performed its fire/water mitigation services on July 31, 2020.  Consistent with the limited damage seen at the Joint Inspection the day before, ProClean's invoice for mitigation services was less than $4,500.00.

Farm Bureau never told Omega Flex that anyone was contemplating demolishing the entire house so that a brand new home could be built.  Omega Flex therefore seeks appropriate spoliation sanctions against Farm Bureau because Farm Bureau unexpectedly authorized the Diel's home to be completely demolished and rebuilt in September 2020 while (i) knowing that its subrogation litigation against Omega Flex was imminent and (ii) without informing Omega Flex that the entire home would be demolished and rebuilt despite the limited fire damage.  Farm Bureau apparently made this decision after

---

[1]    This Motion does not address other costs that Farm Bureau may seek to recoup related to the Diels' personal property or expenses they incurred as a result of the fire.

ProClean's mitigation efforts to appease its customers, who expressed unsupported concerns about the potential for mold to develop 10-15 years down the road despite ProClean's efforts.  But Farm Bureau never told Omega Flex about this decision or its rationale at the time. Farm Bureau never notified Omega Flex of mold damage and, in fact, through today has produced no evidence to support its decision to tear down the home. Omega Flex only discovered that the home was torn down in mid-2022 through discovery in this litigation.

Farm Bureau's intentional spoliation is unfairly prejudicial because it denied Omega Flex any opportunity to determine for itself whether ProClean's mitigation efforts were adequate, whether a tailored repair was feasible, whether any lingering health concern was reasonable, or what the costs of repair compared to the costs of a demolition and rebuild might have been.  The prejudice is compounded by the facts, as Omega Flex only learned through discovery, that Farm Bureau's demolition decision was entirely subjective, did not result from any defined or disclosed procedure, and did not result from retention of any third-party expert qualified to assess the potential for future mold development.

Farm Bureau's decision to demolish/rebuild had massive financial consequences that Farm Bureau kept Omega Flex in the dark about.  Omega Flex first learned through discovery that Farm Bureau only "covered" the cost of the demolition and rebuild by ***retroactively increasing*** the policy limit on the Diel's homeowner's insurance policy after the fire—a pure customer service decision that was not required by the Diel's insurance policy.  The fair market value of the Diel's home at the time of the fire was consistent with their policy limit at that time—$339,000.00.  That should have been the maximum Farm

Bureau spent if the home truly needed to be rebuilt. But by retroactively increasing the policy limit and directly negotiating the rebuild cost with the Diel's preferred builder— again, none of which Farm Bureau disclosed to Omega Flex— Farm Bureau ultimately spent $518,000.00 building the Diels a brand new home. Farm Bureau is now seeking to recover that entire amount from Omega Flex in this lawsuit even though every decision leading to them spending that much money was their own subjective—and undisclosed— decision.

However commendable Farm Bureau's customer service might have been, Farm Bureau's spoliation prevented Omega Flex from assessing whether any of these expenditures were even necessary. Accordingly, Omega Flex seeks an Order limiting Farm Bureau's potential recovery of costs related to the home to its demonstrable mitigation costs of $4,500.00, the amount of ProClean's invoice.

## FACTUAL BACKGROUND

1.      Michael and Sondra Diel reside at 6217 North 114th, Enid, Oklahoma 73701. The Diels built the former home that is the subject of this motion at that same address in 2000-2001.

2.      On July 11, 2020, lightning struck a drip edge on the roof of the Diels' home causing a fire. The fire damage was limited to the attic space above the kitchen and the roof and ceiling at the south end of the living room. The most intense charring was in the attic space for the living room as well as a joist and angled rafters within the attic. Heat application damage to the structure was confined to the attic space, and "there was minimal smoke and soot accumulation throughout the living space of the dwelling." *See* **Exhibit**

4

**A**, Expert Report of David Smith, dated April 3, 2023 at p. 12.

3.     Smith & Associates Fire Analysis & Forensic Engineering ("Smith & Associates") participated in a joint scene inspection on behalf of Omega Flex on July 30, 2020 and documented the fire scene and extent of damages.  *See* Ex, A, 12-20.

4.     The home at issue was a ranch-style, single-floor home with a loft space.  As the many photographs of the home ***after*** the fire indicate, *see* Ex. A, p. 12-20, the vast majority of the home was unaffected by the fire.  For example:



Fig. 1 Photo from Smith & Associates dated July 30, 2020, two weeks after the fire.



Fig. 2 Photo from Smith & Associates dated July 30, 2020, two weeks after the fire.



OFB CF00154 (taken after the fire)

**A.  Farm Bureau Puts Omega Flex on Notice of the Fire**

5.      Oklahoma Farm Bureau ("Farm Bureau"), an insurance corporation licensed

to do business in the State of Oklahoma, allegedly insured the Diels' home and is the

subrogee of Michael Diel for purposes of this lawsuit.

6.    At the time of the fire, Farm Bureau's policy limit for the home (Primary Dwelling) was just $339,306.000.  *See* **Exhibit B** (Excerpts from Farm Bureau Claim File), OFB CF00040-CF00043.  The Effective Date of the Policy was April 2, 2020.  *Id.* at OFB CF00040.

7.    On July 14, 2020, Farm Bureau retained its current counsel, had its fire cause and origin experts inspect the home "for Subro reasons," and "[d]etermined possible subrogation for Flex gas line."  Ex. B, OFB CF00033; OFB CF00244.  Farm Bureau's counsel also sent Omega Flex a letter stating: "A preliminary investigation indicated that the fire may have been caused by a failure of Omega Flex tracpipe which was installed in approximately 2001."  **Exhibit C** (Letter dated 7/14/2023).

8.    On July 15, 2020, Farm Bureau received confirmation that Omega Flex retained fire cause and origin experts to attend a joint inspection of the home to examine the cause of the fire, which was then confirmed for July 30, 2020.  Ex. B, OFB CF00233-00234.

**B.    The Diels Contract For Fire and Water Mitigation Services**

9.    Farm Bureau's adjuster testified that, as of July 13, 2020, it was "undetermined" whether the home would be repaired or completely demolished.  **Exhibit D**, Deposition of Derrick Clark, 3/16/2023, at 46:17-47:8.

10.    On July 13, 2020, the Diels contracted with ProClean to provide for Emergency Services (Water Extractions/Mitigation), Fire Mitigation Services, Mold Remediation Services, and Associated Contents Handling.  Ex. B, OFB CF0453-CF00456.

ProClean indicated their work was for "Restoration/Service/Remodel."  Ex. B, OFB CF00457. Farm Bureau did not provide this information to Omega Flex until it produced discovery in this case.[2]

11.    On July 23, 2020, Farm Bureau purportedly met with Michael Diel and three building contractors "to discuss the rebuild or tear down of home.  All three contractor [sic] recommended tear down and then new construction." Ex. B, OFG CF00124.  Farm Bureau did not provide this information to Omega Flex until it produced discovery in this case.[3]

12.    The joint inspection was held on July 30, 2020 with an Omega Flex representative from Smith & Associates present to obtain information about the cause and origin of the fire.  *See* Ex. A, at p. 12.  Farm Bureau confirmed: "The reason for the joint inspection is to determine location of lightning strike and location of gas line leak and cause of leak." Ex. B., OFB CF00114.

13.    No one told Omega Flex's representatives at the joint inspection on July 30, 2020 that the home would be completely demolished.  *See* Ex. A, at p. 12 ("It was later learned that the entire structure was demolished.  Considering the degree of fire damage to this structure it was highly unusual and unexpected that the entire structure was demolished due the fire damages.  DSA was never notified that the entire structure was to be

---

[2]    *See* **Exhibit I**, Affirmation of Adam M. Masin, Esq., dated July 18, 2022 ("Masin Affirmation").  As the Masin Affirmation describes, as is referenced further herein, Plaintiff did not reveal that the home had been demolished, or any of the facts relevant to the demolition decision, until Plaintiff produced its Claim File on August 4, 2022—two years after the home was demolished.

[3]    What the builders said would be inadmissible hearsay at trial. Farm Bureau's Final Witness List does not identify the names any of these builders who will testify to the content of these conversations.

demolished.").

14.     Farm Bureau did not even inform its own fire investigators that the entire home would be demolished.  *See* **Exhibit E**, Deposition of Curtis Ozment, dated 5/10/23 at 91:11-24 (attended the joint inspection for Farm Bureau, did not learn about demolition until 2023); **Exhibit F**, Deposition of Charles Colwell, dated 4/20/23, at 36:16-38:23 (attended the joint inspection for Farm Bureau, "wasn't that long ago" that he first learned about demolition); **Exhibit G,** Deposition of Mark Hergenrether, dated 4/20/23 12:23-14:19 (attended joint inspection for Farm Bureau, learned about demolition only by reading Omega Flex's expert report); **Exhibit H**, Deposition of Johnie Spruiell, dated 5/12/23, at 91;22-92:4) (did not attend inspections, did not know whether or not home was demolished.).

15.     On July 31, 2020—the day after the joint inspection—ProClean submitted an invoice of $4,448.32 for "Fire Damage Cleaning and Mitigation" and a separate invoice for $619.40 for "Contents Cleaning."  The Date of Service was July 31, 2020.  Ex. B, OFB CF00451-CF00477.  Farm Bureau did not provide this information to Omega Flex until it produced discovery in this case.  There was no reason to do this mitigation work on July 31, 2020 if it was already decided that the home was going to be completely demolished.

16.     As ProClean's diagram of the work they performed on July 31, 2020 indicates, the vast majority of the home did not require mitigation work.  ProClean did ***not*** opine that their services were inadequate to clean or mitigate the fire/water damage to the home.



Ex. B, OFB CF00475 (Main level)

**C.    The Diels And Farm Bureau Agree On Complete Demolition and Rebuild Without Informing Omega Flex**

17.    Sondra Diel testified at her deposition that she wanted the home demolished notwithstanding the cleaning and mitigation services because she was concerned about the water used for putting out the fire: "I've had six bouts with cancer. And we didn't feel comfortable with them building back and not tearing it down totally for fear of mold or mildew years later and it being too late to do anything about it." **Exhibit J**, Deposition of Sondra Diel, 10/28/22, at 44:14-24.  She testified that the decision to demolish the home was the Diels' decision.  *Id.* at 45:1-5.  Farm Bureau did not provide this information to Omega Flex until it produced discovery in this case.

18.    Farm Bureau's adjuster Derrick Clark testified that he (Clark) decided that

the home was a total loss after discussing it with his Farm Bureau supervisor, who had final authority.  Ex. D, at 46:17-47:8.  Clark testified that Farm Bureau "determined it was best for the insured and for us as a company to total it" based on Sondra Diel's health concerns, the opinions of local builders, and a concern about "whatever factors" might arise in trying to repair it.  *Id*. at 47:9-22.  Farm Bureau did not provide this information to Omega Flex until it produced discovery in this case.

19.    Clark testified that the decision to demolish the home was his own subjective opinion and not based on a Farm Bureau policy, procedure or manual that might help him determine whether a house should be repaired or demolished after a fire.  *Id.* at 47:23-48:4. Farm Bureau did not provide this information to Omega Flex until it produced discovery in this case.

20.    There is no evidence in the record that, prior to demolishing the entire home, Farm Bureau obtained an expert opinion that the entire home needed to be demolished because of fire damage, or because there was a material risk of mold/mildew developing from water used to put out the fire, or that such mold/mildew would be sufficient to cause a health risk even after repairs were done to the areas of the home in which water was directed.

21.    Farm Bureau and the Diels began to obtain written opinions about the condition of the home from local builders in late July 2020.  On July 27, 2020, a contractor named Jeff Tebow of Tebow Construction submitted a four sentence opinion to Mr. Diel

that the home was "not repairable." Ex. B, OBF CF00497.[4]  He also submitted a bid to

build a "new home" totaling $435,503.00.  Ex. B, OFB CF00500.  Farm Bureau did not

provide this information to Omega Flex until it produced discovery in this case.

22.     On July 30, 2020, a contractor named Shawn Farney submitted a handwritten

bid to the Diels for rebuilding the home for $524,700.00.  Ex. B, OFB CF00498.  The bid

included amounts attributable to certain categories of work but no further breakdown of

costs or underlying assumptions.  The bid was provided to Farm Bureau.  *Id*.  Farm Bureau

did not provide this information to Omega Flex until it produced discovery in this case.

23.     On August 11, 2020, a contractor named Jessy Dersham submitted an email

bid to Farm Bureau's adjuster Alan Jobes for a "complete Rebuild" totaling $430,000.  The

bid included amounts attributable to certain categories of work but no further breakdown

of costs or underlying assumptions.  Ex. B, OFB CF00499.  Farm Bureau did not provide

this information to Omega Flex until it produced discovery in this case.

24.     Also on August 11, 2020 (a Monday), Farm Bureau informed the Diels "that

wrecking crew with be start [sic] Wednesday or Thursday."  Ex. B, OFB CF 00514.  Farm

Bureau did not provide this information to Omega Flex until it produced discovery in this

case.

25.     On August 17, 2020, Farm Bureau indicated for the first time in its claim file

that it was "Raising reserves for total loss dwelling plus 25% rebuild, 5% debris, 5% trees/

/plants/shrubs/lawns, and $10,000 land."  Ex. B, CFB CF00501.  Farm Bureau did not

---

[4]     This opinion is also inadmissible hearsay to prove the truth asserted, i.e., that the home
was "not repairable."

provide this information to Omega Flex until it produced discovery in this case.

26.    On August 18, 2020, Farm Bureau stated that it "had been reviewing the bids submitted by the other 3 contractors. 2 of them had missed several items and I had been working to adjust those figures to come up with fair assessments.  I requested we meet again with his contractor once the 4th bid is received so we can go over all of the bids and get the most accurate valuation on the home."  Ex. B, OFB CF00484.  Farm Bureau did not provide this information to Omega Flex until it produced discovery in this case.

27.    On August 24, 2020, Michael Diel informed Farm Bureau that Diel was obtaining a 4th estimate on rebuilding the home.  Farm Bureau's adjuster advised Diel "that I'd like to meet with him and his contractor, Shawn Farney, to cover over the estimates in detail to get the closest approximation we can on the rebuild" and that they would follow up "when the last bid was received."  Ex. B.[5]  Farm Bureau did not provide this information to Omega Flex until it produced discovery in this case.

28.    Following receipt of all bids, Michael Diel chose to use Shawn Farney to rebuild the home.  *See* **Exhibit K**, Deposition of Michael Diel, 10/28/22, at 55:13-22.  Farm Bureau, Mr. Diel, and Farney agreed that the rebuild value would be $518,700.00—**which was $82,000-$87,000 greater than the other two bids and exceeded the Diel's Policy limit by over $179,000.000.**  Ex. C, OFB CF000548.  Farm Bureau did not provide this information to Omega Flex until it produced discovery in this case.

29.    Demolition of the home was completed before September 1, 2020.  Ex. B,

---

[5]    It is unclear whether Farm Bureau actually received a fourth bid.  There does not appear to be a fourth bid in their claim file.

OFB CF00408; OFB CF00409-OFB00410 (invoice from Enfield Demolition & Excavation dated 8/27/2020 and photos). Farm Bureau did not provide this information to Omega Flex until it produced discovery in this case.

30.     On July 11, 2023, Scott Langley, Farm Bureau's Rule 30(b)(6) witness relating to any notice Farm Bureau may have given to Omega Flex about demolition, could not testify that Farm Bureau ever told Omega Flex that the home was going to be demolished or why (transcript to be provided when completed). *See* **Exhibit L** (Deposition Notice).

31.     Based on the information in Farm Bureau's claim file, Farm Bureau did not obtain bids for cleaning, mitigating, or simply repairing the limited physical damage to the home beyond ProClean's $4,500.00 in mitigation work. The only bids that Farm Bureau obtained were the cursory opinions from local home builders expressing their self-interested opinions that a new $400,000-$500,000 home needed to be built in the context of those builders bidding on that very work.

32.     ***After*** Farm Bureau negotiated a final bid for rebuilding the home at $518,700.00—and knowing that it would bring this subrogation lawsuit—Farm Bureau ***retroactively*** changed the policy limits on Diels' insurance policy effective April 2, 2020 to increase its coverage level for the primary dwelling from the $339,306.00 limit in effect on the date of the fire to $475,000.00 plus 25%. Ex. B, OFB CF00374-00378 (*see* "How Losses Are Settled" at 1.a).

33.     Farm Bureau's 30(b)(6) witness on this subject, Scott Langley, testified on July 11, 2023 that Farm Bureau's decision to raise the policy limit was a discretionary

customer service decision made by its Errors & Omissions Committee (which he was on) to "do the right thing" for the customer after Diel complained in August 2020 that his coverage wasn't adequate.  The Diels had an annually-renewing homeowner's policy with Farm Bureau since the home was built in 2001.  The Errors & Omissions Committee's decision to retroactively increase the coverage limit in August 2020 was based on a purported error made by the policy underwriter in 2016, who relied on a purportedly incorrect calculation of the home's square footage taken from country assessor data.  The Committee's decision was also based on their discretionary, retroactive conclusion that the home prior to the fire was "above average quality" and not "average quality."  ***Langley testified that these decisions were not required based on any language in the policy that would have permitted/required a retroactive correction or coverage increase.***  (Transcript to be provided when completed).

34.    The fair market value of the Diels' home at the time of the fire was only $340,000.00 (consistent with the $339,000 policy limit at the time of the fire).  *See* **Exhibit M**, Expert Report of David Abraham, Colliers International, dated April 3, 2020.

35.    In this subrogation lawsuit, Farm Bureau is seeking to recover at least $518,700.00 it paid out to build the Diels a brand new home.  This amount is approximately $179,000.00 greater than both the fair market value of the home at the time of the fire and the Diels' policy limit in effect at the time of the fire.  It is also approximately 15% greater than two of the three bids that Farm Bureau received from other contractors.

36.    Farm Bureau has not named an expert to testify that the home needed to be demolished, the ProClean's mitigation work was inadequate, or to provide any other

evidence relating to the costs of reasonably necessary, non-discretionary repairs. Farm Bureau has not provided any evidence—expert or otherwise—that it would have cost anything close to $340,000.00 (or even a fraction of that) to repair the limited areas of the roof, ceiling, drywall, and internal plumbing/wiring impacted by the fire.

## ARGUMENT

Spoliation "refers to the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Barnett v. Simmons*, 197 P.3d 12, 20 (2008). Spoliation "occurs when evidence relevant to prospective civil litigation is destroyed, adversely affecting the ability of a litigant to prove his or her claim." *Id*. Spoliation sanctions are proper when "(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." *Turner v. Pub. Serv. Co. of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. Grant,* 505 F.3d 1013, 1032 (10th Cir.2007)).

These factors are present here because:

(1)     Farm Bureau authorized the complete demolition of the Diels' home based on the Diels' request;

(2)     The Diels' home was completely demolished;

(3)     Farm Bureau authorized and allowed the complete demolition of the Diels' home to occur after concluding that it had a potential subrogation claim against Omega Flex and while the filing of that litigation was imminent;

16

(4)    Farm Bureau failed to notify Omega Flex that the home would be completely demolished even though the actual damage to the home was limited and restricted to a small portion of the structure;

(5)    Farm Bureau failed to notify Omega Flex that it made a discretionary decision to retroactively increase the coverage limit in order to cover the cost of the rebuild, or that it permitted Diel to choose his own builder (the most expensive by 15%);

(5)    By allowing the Diels' home to be completely demolished, Farm Bureau denied Omega Flex the opportunity to determine for itself (i) whether the limited damage could be repaired, (ii) whether complete demolition of the entire home was necessary, and (iii) the costs of repair versus demolition and rebuild; and

(6)    Farm Bureau's actions unfairly prejudice Omega Flex's ability to defend this action because Farm Bureau is seeking to recover the cost of demolishing and rebuilding a brand new home rather than merely seeking to recover the cost of mitigating and repairing the limited part of the home that was damaged by the fire.

Although Farm Bureau's bad faith is a reasonable inference from the facts here, a defendant is "not required to show that plaintiff acted in bad faith in destroying the evidence in order to prevail on its request for spoliation sanctions." *103 Invs. I, L.P. v. Square D Co.*, 470 F.3d 985, 989 (10th Cir. 2006). That said, apart from the possibility of gross negligence, it is difficult to conclude that Farm Bureau had a benign motive for keeping Omega Flex in the dark about the extreme decision to demolish/rebuild the home when it knew that it would be bringing a subrogation lawsuit seeking to recover those very expenditures.

Omega Flex is not seeking a "dispositive" sanction here, such as dismissal, because the spoliation involves evidence regarding the amount of potential damages rather than Omega Flex's alleged liability.  A non-dispositive spoliation sanction  "should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he or she would have been in absent the wrongful destruction of evidence by the opposing party."  *Markham v. Nat'l States Ins. Co.*, No. CIV.02-1606-F, 2004 WL 3019309, at *8 (W.D. Okla. Dec. 27, 2004).  "A court may also choose to address spoliation by remedying any evidentiary imbalance caused by the spoliator's destruction of relevant evidence."  *U.S. ex rel. Koch v. Koch Indus., Inc.*, 197 F.R.D. 488, 490 (N.D. Okla. 1999).

Here, "the least severe sanction that would be appropriate to balance out the prejudice to the defendant," *103 Invs.*, 470 F.3d at 989, is an Order capping the damages that the Plaintiff can recover for the Home to the $4,500.00 it spent on fire mitigation services as of July 31, 2020.  ProClean's efforts the day after Omega Flex's presence at the joint origin and cause inspection represent the provable effort that Farm Bureau spent cleaning and mitigating damage in the home—efforts that made no sense if Farm Bureau had already decided that the entire structure should be demolished.  Limiting damages to the provable mitigation costs as of July 31, 2020 therefore restores the evidentiary imbalance that Farm Bureau caused by demolishing the entire home without informing Omega Flex of its intent after ProClean's mitigation efforts.  Although other limited repairs well-short of complete demolition may have been necessary, Farm Bureau has no evidence on those costs and its spoliation prevented Omega Flex from assessing for itself whether

fire and water-damage mitigation efforts were adequate, what repairs to the home were actually necessary, and what the costs of those repairs might have been compared to the cost of complete demolition and building a brand new home.

Farm Bureau compounded the unfairly prejudicial impact of its spoliation due to the discretionary and subjective way in which Farm Bureau decided to "total" the home and then retroactively increase the policy limits to cover those costs. Farm Bureau did not inform Omega Flex about Mrs. Diel's purported health concerns regarding mold/mildew and did not obtain an expert opinion that the structure would be susceptible to concerning mold/mildew levels even after cleaning/mitigation/repair. Thus, Farm Bureau failed to inform Omega Flex of the very reason why it authorized the home to be demolished, denying Omega Flex any opportunity to investigate that issue for itself.

Farm Bureau also failed to obtain estimates limited to repairing the specific damage allegedly caused by the fire/water, such as the reasonable costs of any necessary repairs to the roof, drywall, and home systems that Plaintiff contends were caused by the fire. Although Farm Bureau relied on cursory opinions from third-party local builders (who they did not disclose as experts or properly disclose as fact witnesses), (i) those opinions are inadmissible hearsay, (ii) Farm Bureau did not produce those opinions to Omega Flex at the time, and (iii) Farm Bureau did not obtain estimates from those builders comparing repair costs with rebuild costs. As such, Farm Bureau not only prevented Omega Flex from assessing the repair costs, Farm Bureau itself has no admissible evidence that repairing the home would have cost anything close to the home's $340,000.00 fair market value (or even a fraction thereof) at the time of the fire.

It should be noted that Farm Bureau's discretionary decisions regarding demolition and the policy coverage increase were its own independent decisions that were not caused by any alleged defect in Omega Flex's CSST product and should not be recoverable as damages in this lawsuit regardless. Farm Bureau's attempt to shift financial responsibility for the consequences of its discretionary decisions to Omega Flex through this lawsuit, however, at least carried with it well-established duties to disclose, rather than conceal and destroy, the very evidence that Farm Bureau relied on to make these decisions. Omega Flex has a right to defend itself against spurious claims and parties who seek damages untethered to the harm that its product allegedly caused. The spoliation sanctions sought herein merely attempt to rebalance the playing field.

Accordingly, Omega Flex seeks an Order limiting Farm Bureau's potential recovery related to the home to the $4,500.00 that Farm Bureau actually spent on cleaning and mitigation efforts.

## **CONCLUSION**

For the reasons stated herein, Omega Flex requests that the Court impose sanctions against Farm Bureau for spoliation of evidence and that the Court thereby enter an Order limiting Farm Bureau's potential recovery related to the home to the $4,500.00 that Farm Bureau actually spent on cleaning and mitigation efforts, as well as such and further relief as the Court deems just.

Dated:  July 14, 2023

                                   Respectfully submitted by,


                                   */s/ Adam M. Masin*
                                   Adam M. Masin
                                   Cullen W. Guilmartin (admitted *pro hac vice*)
                                   GORDON & REES LLP
                                   95 Glastonbury Blvd., Suite 206
                                   Glastonbury, CT 06033
                                   (860) 494-7542
                                   (860) 560-0185 (fax)
                                   amasin@grsm.com
                                   *Counsel for Defendant Omega Flex, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of July, 2022, a copy of the foregoing Motion and Memorandum of Law in Support of Sanctions Against Plaintiff Due to Plaintiff's Intentional Spoliation of Evidence was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


By: */s/ Adam M. Masin*
Adam M. Masin